In the Matter of Michael ARZUAGA–
GUEVARA, a minor,

Alfred I. duPont Hospital for
Children, Petitioner,

v.

Yadira Guevara, Mother and Jonathan
Arzuaga, Father, Respondents.

No. 506, 2001.

Supreme Court of Delaware.

Submitted: Oct. 17, 2001.
Decided: Oct. 23, 2001.

James Brendan O'Neill (argued) and James D. Nutter (argued), Office of the Public Defender, Wilmington, Delaware, for appellant, Jonathan Arzuaga.

Kathryn J. Laffey (argued), Wilmington, Delaware, Attorney Guardian Ad Litem for Michael Arzuaga–Guevara.

David J. Ferry, Jr. (argued), and Rick S. Miller, Ferry & Joseph, P.A., Wilmington, Delaware, for Mother, Yidira Guevara.

John A. Parkins, Jr. (argued) and Steven J. Fineman, Richards, Layton & Finger, Wilmington, Delaware, for petitioner, Alfred I. duPont Hospital for Children.

Before VEASEY, Chief Justice,
WALSH and HOLLAND, Justices.

HOLLAND, Justice:

Five-month-old Michael Arzuaga–Guevara ("Michael") is a patient in the pediatric intensive care unit at the Alfred I. duPont Hospital for Children ("Hospital"). Michael is suffering from severe brain damage and other injuries allegedly inflicted by his father, Jonathan Arzuaga ("Father"). It is undisputed that Michael will spend the rest of his life in a persistent vegetative state.

This is an appeal by the Father from a final judgment entered by the Court of Chancery on October 9, 2001. The Court of Chancery issued a Memorandum Opinion and Order[1] appointing Yadira Guevara ("Mother") as the permanent guardian for Michael. That order gave the Mother authority to instruct the Hospital to withdraw the ventilator that is assisting Michael's ability to breathe. In this appeal, the Father does not challenge the merits of the Court of Chancery's findings that Michael has suffered severe permanent brain injuries and that it is in his best interest to deescalate life support to allow nature to take its course.

The sole issue presented in this appeal is whether the Court of Chancery had jurisdiction over the guardian proceedings that were initiated by the Hospital. We have concluded that the Court of Chancery had jurisdiction to act upon the Hospital's petition. Accordingly, the judgment of the Court of Chancery is affirmed.

### Substantive Facts

On September 1, 2001, Michael was admitted to the pediatric intensive care unit at the Hospital. Michael has remained in intensive care since the date of his admission. He is being kept alive with the assistance of life support through the use of a ventilator and feeding tube.

Michael's doctors have diagnosed him as suffering from multiple serious injuries, including extensive irreversible brain damage. Michael's doctors agree that Michael will never be able to walk, talk, see, feed himself, or perform even the most basic cognitive functions. He will require constant, intense medical intervention for the remainder of his life.

Although Michael is in a persistent vegetative state, the evidence is uncontroverted that the medical technology presently in place can extend the length of Michael's life. Michael's treating physicians all agree that the quality of his extended life will always be abysmal. It is also uncontroverted that Michael will likely die within a short period of time if he is taken off the ventilator. An independent medical examination conducted at the request of

---

1. *In re Michael Arzuaga–Guevara,* Del.Ch., C.M. No. 10211, Lamb, V.C. (Oct. 9, 2001) (Op. and Order).

Michael's attorney guardian *ad litem* corroborates the diagnosis and prognosis of the treating physicians.

Almost immediately after Michael's admission to the hospital, New Castle County police officers arrested Jonathan Arzuaga, Michael's natural father, for suspicion of crimes associated with Michael's injuries. To date, Jonathan Arzuaga remains in custody at Delaware Correctional Center in default of secured bail. On October 9, 2001, a grand jury in New Castle County returned an indictment against Jonathan Arzuaga charging him with Assault by Abuse or Neglect,[2] Assault in the Second Degree,[3] Endangering the Welfare of a Child, (two counts)[4] and Offensive Touching.[5] No arraignment date has been set.

Shortly after Michael's admission to the hospital, his parents disagreed on whether to place a "Do Not Resuscitate Order" ("DNR Order") on his medical chart. Michael's Mother agreed to have a DNR Order placed on Michael's medical chart. Michael's Father refused to consent to the placement of a DNR Order. This litigation was commenced because Michael's Mother and Father could not agree on the course of Michael's treatment.

### Procedural Facts

On September 13, 2001, in an effort to obtain definitive guidance regarding Michael's medical care, the Hospital filed an emergency petition in the Court of Chancery. The Hospital's petition was filed pursuant to 12 *Del. C.* § 3901 and sought to have the Mother appointed as interim guardian for purposes of consenting to or withholding Michael's medical treatment.

The Court of Chancery scheduled a hearing to determine whether to appoint the Mother as Michael's interim guardian. Prior to that hearing, the Court of Chancery appointed Kathryn Laffey, Esquire, who is acting on a *pro bono* basis, as an attorney guardian *ad litem* for Michael. The Father has been represented by counsel from the Office of the Public Defender throughout the course of all proceedings.

On September 19, 2001, an evidentiary hearing on the Hospital's emergency petition was held by the Court of Chancery. At the hearing, counsel for the Father objected to the Court of Chancery's jurisdiction, arguing that the Family Court had exclusive jurisdiction. The Father also suggested that a third party be appointed as Michael's interim guardian instead of the Mother.

At the conclusion of the hearing, the Court of Chancery granted the Hospital's petition and appointed the Mother as Michael's interim guardian.[6] The Court of Chancery's order specifically allowed her to consent to the entry of a DNR Order. That order precluded her, however, from consenting to the de-escalation of life support.

Subsequently, the attorney guardian *ad litem* appointed for Michael filed a motion with the Court of Chancery. That motion sought the entry of an order instructing the Hospital to de-escalate medical intervention and the placement of a "Do Not Re–Intubate Order" on Michael's medical chart. A hearing was scheduled for October 2, 2001. Once again, the Father was represented by counsel. David Ferry, Esquire, also acting on a *pro bono* basis,

2. 11 *Del. C.* § 615.

3. 11 *Del. C.* § 612(a)(1).

4. 11 *Del. C.* § 1102.

5. 11 *Del. C.* § 601.

6. *In re Michael Arzuaga–Guevara,* Del.Ch., C.M. No. 10211, Lamb, V.C. (Sept. 21, 2001) (ORDER).

represented the Mother at that hearing and has continued to represent her.

At the October 2, 2001 hearing, counsel for the Father again objected to the Court of Chancery's jurisdiction. The hearing proceeded over the Father's objection. The attorney guardian *ad litem* presented testimony from one of Michael's attending physicians and a neurologist at the hearing. The Mother also testified. The Father did not testify or present any evidence.

A few days after the October 2 hearing, the Court of Chancery entered an opinion and order granting the relief sought. The portion of that order that permitted the Mother to consent to the de-escalation of life support was stayed by the Court of Chancery, however, to allow the Father time to appeal to this Court. Upon the filing of a Notice of Appeal, this Court entered an order requiring expedited briefing and continuing the stay.

### Chancery Asserts Guardianship Jurisdiction

■ The Court of Chancery held that it was vested with jurisdiction to act on the Hospital's guardianship petition pursuant to 12 *Del. C.* § 3901. The express language of 12 *Del. C.* § 3901 specifically vests the Court of Chancery with jurisdiction to appoint guardians for disabled persons. That section states "[t]he Court of Chancery shall have the power to appoint guardians for the person or property, or both, of any disabled person resident of this State . . . ." Section 3901 defines a "disabled person" as "any person who . . . [b]y reason of being under the age of 18 is legally unable to manage their own property or make decisions concerning the care of their own person . . . ."

Michael Arzuaga–Guevara was approximately four months old when this petition was filed. Accordingly, by definition, Michael is a "disabled person" within the meaning of Section 3901. Thus, there can be no question that the unambiguous language in Section 3901 vests the Court of Chancery with jurisdiction to appoint a guardian for purposes of consenting to Michael's medical care.

### Father's Argument

■ The only issue the Father raises on appeal challenges the jurisdiction of the Court of Chancery to appoint a guardian for Michael. The Father acknowledges that Section 3901 expressly grants that jurisdiction to the Court of Chancery. Nevertheless, the Father contends that the Court of Chancery was divested of subject matter jurisdiction, notwithstanding the unambiguous provisions in Section 3901, either because the Family Court has exclusive jurisdiction over guardianships for minors or because an adequate remedy at law was available to the Hospital in the Family Court. The Father bases his alternative arguments on the following statutes: 10 *Del. C.* § 921(3),[7] which grants the Family Court exclusive original civil jurisdiction in all proceedings concerning petitions or actions for the protection or care of children; 10 *Del. C.* § 921(4),[8] which he alleges grants the Family Court exclusive original civil jurisdiction in all proceedings concerning judicial consent to medical care of a child when such consent is required by

---

7. 10 *Del. C.* § 921(3) vests the Family Court with exclusive original jurisdiction in all proceedings on "any petitions or actions, for the education, protection, control, visitation, possession, custody, care, or support of children . . . ."

8. 10 *Del. C.* § 921(4) vests the Family Court with exclusive original jurisdiction in all proceedings concerning "[j]udicial consent to employment, medical care, or enlistment in the armed services of a child when such consent is required by law."

law; and 10 *Del C.* § 925(16),[9] which grants the Family Court general jurisdiction to act in guardianship proceedings involving minors.

### Family Court Guardianship Jurisdiction

The Father contends that Sections 921(3), (4)—which define the Family Court's *exclusive* jurisdiction—vest the Family Court with the sole authority to hear petitions for guardianships. The terms of Sections 921(3), (4), however, do not even mention guardians. Following the enactment of Section 921, in substantially the same form as it reads today, in an appeal involving a minor, this Court held in *Bunting* that "[o]ur Court of Chancery alone is vested with the power to appoint guardians...."[10] The logical corollary of our holding in *Bunting* was this Court's determination that the nearly identically-worded predecessor of Sections 921(3), (4) did not grant the Family Court *any* jurisdiction to appoint guardians for minors.

Eight years after our holding in *Bunting*, the General Assembly enacted 10 *Del. C.* § 925(16). The section now provides that "[t]he [Family] Court and each Judge shall have authority to ... appoint guardians of the person over minors under 18 years of age." The enactment of Section 925(16) reflects a legislative response to this Court's holding that Sections 921(3), (4) did not vest the Family Court with any authority to appoint guardians for minors.

There is no language in Section 925(16), however, that purports to vest the Family Court with exclusive jurisdiction to appoint guardians for minors. Moreover, the legislative history of Section 925(16) reflects that the section was never intended to confer exclusive guardianship jurisdiction on the Family Court. Section 925(16) originated as Senate Bill 247 in the 131st General Assembly.[11] The title to the bill was "An Act ... Giving Family Court Concurrent Jurisdiction with the Court of Chancery...."[12] The synopsis to that bill expressly states that the Family Court's jurisdiction was to be concurrent with that of the Court of Chancery: "[t]his Act gives Family Court concurrent authority to appoint guardians of the person over minors under 18 years of age with the Court of Chancery."[13]

In contrast to Section 925, Section 921 provides for certain "exclusive original civil jurisdiction" in the Family Court. If the General Assembly intended that the guardian jurisdiction conferred upon the Family Court in Section 925(16) was to be exclusive to the Family Court, it would have included that jurisdictional grant in Section 921. Therefore, contrary to the Father's contention, Section 925(16)—not Sections 921(3), (4)—vests the Family Court with jurisdiction to appoint guardians for minors and that jurisdiction is *not* exclusive. It is noteworthy that the non-exclusive nature of the Family Court's guardian jurisdiction for minors was maintained on July 10, 2001, when a comprehensive guardianship statute was signed into law.[14]

---

**9.** 10 *Del. C.* § 925(16) provides that the Family Court has authority "[t]o appoint guardians of the person over minors under 18 years of age."

**10.** *In re Bunting*, Del.Supr., 311 A.2d 855, 857 (1973).

**11.** 63 *Del. Laws*, c. 133 (1981).

**12.** *Id.*

**13.** *See* S.B. 247, 131st Gen. Assem. (Del. 1981).

**14.** 13 *Del. C.* §§ 2301–2359; 73 *Del. Laws*, c. 150 (2001).

### Chancery's Equity Jurisdiction

■ Alternatively, relying on 10 *Del. C.* § 342, the Father argues that the mere existence of an adequate remedy at law in the Family Court precludes the assertion of guardianship jurisdiction by the Court of Chancery.[15] The operation and application of Section 342 can be understood only in the historic context of the Court of Chancery's venerable exercise of general *equity* jurisdiction that is now found in Article IV, Section 10 of the Delaware Constitution. That general equity jurisdiction can be traced to a period predating the Declaration of Independence.[16]

The historical origins of Article IV, Section 10 are found in the Colonial Act of 1726–1736 ("Gordon Act").[17] The general equity jurisdiction of the Court of Chancery was originally established by Sections 21 and 25 of the Gordon Act. Today, Section 10 of Article IV vests the Court of Chancery with "all the general equity jurisdiction of the High Court of Chancery of Great Britain as it existed prior to the separation of the colonies, subject to the proviso, originally contained in Section 25 of the [Gordon Act] ... to the effect that the Chancellor shall not hear and determine any cause where a sufficient remedy exists at law."[18] Judge Rodney has succinctly summarized the scope of Article IV, Section 10 of the present 1897 Constitution and its corresponding antecedents in Delaware's earlier constitutions:

> The jurisdiction of equitable causes given by Sec. 21 [of the Gordon Act] was, as we have seen, translated into constitutional provisions, and has appeared in every constitution of the State. No new jurisdiction was given by these constitutions, however, but that same jurisdiction was continued that existed under the original Section 21.... That jurisdiction was as expressly limited by Sec. 25 of the same Act because the grant of jurisdiction by Sec. 21, together with its limitation of that jurisdiction by Sec. 25, is the jurisdiction which existed and which has been continued from that time.[19]

The Court of Chancery's jurisdiction is also addressed in Article IV, Section 17 of the Delaware Constitution of 1897. Section 17 provides that the General Assembly "shall have power to repeal or alter any Act of the General Assembly giving jurisdiction to ... the Court of Chancery ... and to confer upon ... the Court of Chancery jurisdiction and powers in addition to those hereinbefore mentioned."[20] The question of the General Assembly's authority to alter the historic Article IV, Section 10 general equitable jurisdiction of the Court of Chancery was answered by

---

15.  10 *Del. C.* § 342 reads in pertinent part as follows: "[t]he Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."

16.  *See* D. Wolfe and M. Pittinger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 2–2 The Historical Antecedents of Chancery's Equity Jurisdiction at 2–2 (2000).

17.  *duPont v. duPont*, Del.Supr., 85 A.2d 724, 727 (1951). Between 1726 and 1736, during the tenure of Governor Patrick Gordon, "An Act for the Establishing Courts of Law and Equity within this Government" ("Gordon Act") was passed. 1 *Del. Laws*, c. LIV (1700–1797). By this Act, a court of equity was created for Delaware (then the Lower Three Counties of Pennsylvania).

18.  *duPont v. duPont*, 85 A.2d at 727.

19.  *Glanding v. Industrial Trust Co.*, Del.Supr., 45 A.2d 553, 561 (1945) (Rodney, J., dissenting).

20.  DEL. CONST. art. IV, § 17.

this Court in *duPont v. duPont.*[21]

In *duPont,* this Court rejected the contention that Section 17 of the 1897 Constitution authorized the General Assembly to abrogate the general equitable jurisdiction vested in the Court of Chancery by Section 10. Our analysis in *duPont* focused initially on the 1792 Delaware Constitution. We noted that, in 1792, for the first time, a separate Court of Chancery was vested with constitutionally defined jurisdiction which could not be disturbed by the General Assembly.[22] We determined that this was made clear, in particular, by the absence in the Constitution of 1792 of a counterpart to Section 17 in the 1897 Constitution.[23]

Accordingly, in *duPont,* we asked: What was the purpose of including the first sentence of what is now Section 17 in the 1831 Constitution, which authorized the General Assembly to repeal or alter any act giving jurisdiction to the Court of Chancery, since general equity jurisdiction had been vested in the Court of Chancery by the 1792 Constitution and secured from statutory legislative action?[24] The answer was that between 1792 and 1831, the General Assembly had increased the powers of the Chancellor by statute. Consequently, we determined that it was only with respect to these statutory enhancements of the Court of Chancery's jurisdiction that the General

Assembly was authorized to act, when Section 17 was added to the 1831 Constitution.

Throughout the period from 1831 to 1897, the General Assembly had continued to confer additional powers upon the Chancellor and the Court of Chancery. Accordingly, the 1897 Constitution added a sentence in Section 17 *expressly* giving the General Assembly power to expand the Court of Chancery's jurisdiction beyond its historic equitable origins. In *duPont,* we concluded that Section 17 is not an authorization for the General Assembly to restrict the Court of Chancery's general equity jurisdiction to less than it was in 1792.

The result in *duPont,* therefore, was our holding "that the general equity jurisdiction of the Court of Chancery is measured in terms of the general equity jurisdiction of the High Court of Chancery of Great Britain and is a constitutional grant not subject to legislative curtailment, except in so far as the proviso ... originally found as Section 25 of the [Gordon] Act of 1726–1736, operates to curtail it."[25] In *duPont,* we also held that the Constitutions of 1792, 1831 and 1897 intended to establish for the benefit of the people of the state a tribunal to administer the remedies and principles of equity.[26] Consequently, the historical equitable jurisdiction of the Court of Chancery to hear a matter cannot be divested simply by the legislative enactment of a new statute addressing the same subject matter.[27] The General Assembly must ex-

**21.** *duPont v. duPont,* Del.Supr., 85 A.2d 724 (1951).

**22.** *Id.* at 728. *See also* William T. Quillen, *Equity Jurisdiction in Delaware Before 1792,* 2 DELAWARE LAWYER 18 (1984).

**23.** *duPont v. duPont,* 85 A.2d at 729–30.

**24.** *Id.*

**25.** *Id.* at 729.

**26.** *Id.*

**27.** In *duPont,* we observed that any other construction of Article IV, Section 17 would permit the practical abolition of all courts by the action of one legislative session. *duPont v. duPont,* Del.Supr., 85 A.2d 724, 729–30 (1951). Such authority would be in direct conflict with the provisions providing for the amendment of the Delaware Constitution. *Id.* Such authority would also nullify the "open courts" provision in Article 9 of Section I that has appeared in every Delaware Constitution since 1792. *Id.*

pressly make the subject matter exclusive to the new tribunal: "[i]t is settled that Chancery [historic equitable] jurisdiction remains, notwithstanding the statutory creation of jurisdiction of the subject matter in another court and a remedy elsewhere that may be adequate, unless the remedy is equivalent and is expressly made exclusive in the other tribunal." [28]

When Title 10 of the Delaware Code was revised in 1953, what had originally appeared as Sections 21 and 25 of the Gordon Act were reconstituted as Sections 341 and 342. Section 341, derived from Section 21 of the Gordon Act, provides that "[t]he Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity." [29] Section 342, based upon Section 25 of the Gordon Act, provides that "[t]he Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State." [30]

Our brief summary of the Court of Chancery's general equity jurisdiction and the colonial origins of Section 342 places the Father's alternative Section 342 equitable "adequate remedy at law" argument into perspective. Section 342 is "a mere declaration of the ancient rule of equity" precluding equitable relief where an adequate remedy is available at law. [31] Section 342 "being a mere declaration of the ancient rule of equity, neither grants nor divests equity of any jurisdiction." [32]

Guardianship proceedings, however, are not part of the Court of Chancery's historic general equity jurisdiction. Assuming, without deciding, that the Family Court can provide an adequate legal remedy, [33] the Father's alternative Section 342 argument fails. Section 342 cannot provide a basis for the Father's alternative argument because guardianship jurisdiction has been conferred on the Court of Chancery by statute and was not part of its historic general equity jurisdiction. [34]

■ A guardianship petition for a minor does not call for equitable relief. The

28. *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, Del.Supr., 267 A.2d 586, 591 (1970). *See also Douglas v. Thrasher*, Del. Supr., 489 A.2d 422, 426 (1985) (holding that statute conferring jurisdiction on the Family Court over support agreements does not preclude Chancery jurisdiction over a third party's claims where such claims are not made exclusive to the Family Court); *Boxer v. Husky Oil Co.*, Del. Ch., 429 A.2d 995, 998 (1981).

29. 10 *Del. C.* § 341.

30. 10 *Del. C.* § 342.

31. *Boxer v. Husky Oil Co.*, 429 A.2d at 998.

32. *Id.*

33. It is quite possible that the Hospital had no grounds to file a Petition for Guardianship against the Mother in the Family Court. Neither the Hospital nor the Father has alleged

that the child is dependent and/or neglected as to the Mother. A guardianship petition under 13 *Del. C.* § 2322(9) requires a statement that *each* parent is either unable to or unwilling to provide care for their child. There is no allegation of the Mother's lack of care. Further, the language of Section 2320 implies that the person or persons filing the petition are seeking to act as guardian. The attorney guardian *ad litem* also questions whether the Hospital would have had standing to file in the Family Court since there is no definition of "person" for purposes of Chapter 23 of Title 13; there is a residency requirement; the Hospital is not a State Agency otherwise eligible to file a Petition for Dependency/Neglect under Family Court Civil Rule 200; and the Hospital was not seeking to be appointed as Michael's guardian.

34. *In re Markel*, Del.Supr., 254 A.2d 236, 238 (1969). We overrule any suggestion to the contrary in *City of Newark v. Gass*, Del.Ch., C.A. No. 5143, 1977 WL 9533, at *2 (July 12, 1977).

maxim restricting equity's reach in Section 342, if there is an adequate remedy at law, has no applicability in the present appeal. The only issue for this Court to decide is whether the guardianship statute confers jurisdiction on the Court of Chancery to hear the Hospital's petition.

### Chancery's Statutory Jurisdiction

We have already discussed that, since 1792, the General Assembly has enhanced the jurisdiction of the Court of Chancery through express statutory enactments. That authority is now found in Article IV, Section 17 of the Delaware Constitution of 1897.[35] That provision specifically authorizes the General Assembly to enact statutes that confer jurisdiction and powers upon the Court of Chancery, in addition to the general equitable jurisdiction that is found in Section 10.[36] Several years ago, over 100 statutory references were collected to demonstrate the breadth and scope of the Court of Chancery's statutory jurisdiction.[37] The Court of Chancery's jurisdiction to appoint a guardian of the person and/or property of a minor is one of these statutes.[38]

Clearly, the General Assembly has more latitude in modifying or repealing any statutory jurisdiction that it confers upon the Court of Chancery, in addition to the historic general equitable jurisdiction that is vested in the Court of Chancery by Article IV, Section 10. The General Assembly did not exercise that authority, however, with regard to the Court of Chancery's statutory guardianship jurisdiction that is at issue in this case.[39] It is not sufficient for the Father to demonstrate that a guardianship proceeding for Michael is available in the Family Court. The Father must also show that the statute creating the Family Court's guardianship jurisdiction demonstrates a clear intent to divest the Court of Chancery of jurisdiction over similar matters. The Father has failed to discharge that burden of proof.

We have found no support for the Father's jurisdictional arguments in our analysis of the relevant statutory provisions. Applying well-established principles of statutory construction, we have determined there is no indication that the General Assembly intended the Family Court's guardianship jurisdiction to be exclusive of the Court of Chancery's guardianship jurisdiction. Accordingly, we hold that, at the present time, the General Assembly intends for the Court of Chancery to retain concurrent jurisdiction with the Family Court over the appointment of guardians for minors.[40]

### Conclusion

We commend all of the attorneys for their excellent presentations in this Court and in the Court of Chancery. We gratefully acknowledge the *pro bono* participation of Kathryn J. Laffey and David J.

---

**35.** DEL. CONST. art. IV, § 17.

**36.** DEL. CONST. art. IV, § 10. *See* D. Wolfe and M. Pittinger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 2–2(d) Subject Matter Jurisdiction Specifically Conferred by Legislative Enactment at 2–15 (2000).

**37.** William T. Quillen, *Constitutional Equity and the Innovative Tradition*, 56 LAW & CONTEMP. PROBS. 29, 48 (1993).

**38.** *See, e.g.*, *In re Erich*, Del.Ch., 310 A.2d 910, 911 (1973); *In re Two Minor Children*, Del.Ch., 283 A.2d 859, 861 n. 1 (1971).

**39.** *See* 12 *Del. C.* § 3901.

**40.** The Court of Chancery has shared subject matter jurisdiction with other courts in the past. *See* William T. Quillen & Michael Hanrahan, *A Short History of the Delaware Court of Chancery*, 18 DEL. J. CORP. L. 819, 834 (1993).

Ferry, Jr. Such service is in accordance with the highest traditions of the Delaware Bar.

The judgment of the Court of Chancery is affirmed. The stay of paragraph 1 of the October 10, 2001 Order of the Court of Chancery which was extended by Order of this Court dated October 11, 2001 is hereby vacated.[41] The Clerk of this Court is directed to issue the mandate forthwith.

---

41. *In re Michael Arzuaga–Guevara,* Del.Supr., No. 506, 2001, Veasey, C.J. (October 11, 2001), Order at para. 5.