# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BRIDEV ONE, L.L.C. d/b/a/ PIREES
PIRI PIRI GRILL, JAY PATEL, &
MEGHA PATEL

    Judgment Debtors,

    v.

REGENCY CENTERS, L.P.,

    Judgment Creditor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. Nos. N14C-07-115(DCS)
N14C-09-019(DCS)
CONSOLIDATED

## OPINION

This 26th day of March, 2018, upon consideration of Defendant's five Motions for Charging Orders, Debtors' Response in Opposition to the five Motions for Charging Orders, the Commissioner's Report and Recommendation, and the record in this case, Defendant's five Motions for Charging Orders are **GRANTED**.

This action stems from a contract dispute.[1] On April 24, 2013, Regency Centers, L.P. ("Regency") and Bridev One, L.L.C. ("Bridev") executed a commercial lease agreement for Bridev's restaurant. Jay Patel and Megha Patel (the

---

[1] The history of this case is set forth in *Bridev One, LLC v. Regency Centers, L.P.*, CA No. N14C-07-115 DCS (Del. Super. Oct. 31, 2016) (Decision After Trial) and *Bridev One, LLC v. Regency Centers, L.P.*, CA No. N14C-07-115 DCS (Del. Super. Dec. 4, 2017) (Amended Opinion and Order) (adopting the Commissioner's July 20, 2017 Report and Recommendation concerning the calculation of the judgment).

"Patels" and collectively with Bridev, "Debtors") personally guaranteed Bridev's performance of the Lease by executing a guaranty agreement. Bridev stopped making the required payments to Regency under the lease and subsequently filed a complaint in this Court for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealings, and Common Law Fraud. Regency filed a counterclaim against Bridev that alleged Breach of Lease and Breach of Guaranty.[2]

At the conclusion of a three-day bench trial, the Court issued its Decision After Trial and held that "there was a contract, Regency did not breach the Lease, and that Regency did not breach the implied covenant of good faith and fair dealing. The Court also finds that Bridev breached the Lease and that [the Patels] breached their personal guaranty."[3]

On August 1, 2017, after a hearing, a Superior Court Commissioner issued a report and recommendation to enter judgment in favor of Regency in the amount of $807,879.96 plus interest. The Court issued an opinion on December 1, 2017 that adopted the report and recommendation and imposed that judgment.[4]

On January 11, 2018, Regency subsequently filed five Motions for Charging Orders (the "Motions"), pursuant to 6 *Del. C.* § 18-703, against any limited liability

---

[2] The complaint and cross-complaint were consolidated.
[3] *Bridev One, LLC,* CA No. N14C-07-115 DCS at *2-3 (Decision After Trial).
[4] *Bridev One, LLC,* CA No. N14C-07-115 DCS (Del. Super. Dec. 4, 2017) (December 1, 2017 opinion amended to correct typographical errors).

2

company ("LLC") membership interest of Jay Patel. Debtors opposed the Motions.

A hearing before the same Commissioner was held on February 5, 2018. Debtors argued, in part, that the Chancery Court had exclusive jurisdiction over charging orders pursuant to § 18-703(f)[5] and *Hanna v. Baier*, a December 2017 Superior Court case which held that the Court of Chancery had *exclusive* jurisdiction concerning charging orders.[6] On February 9, 2018, based on review of legislative history, the Commissioner issued her Report and Recommendation that the Court

---

[5] 6 *Del. C.* § 18-703 states:

> (a) On application by a judgment creditor of a member or of a member's assignee, a court having jurisdiction may charge the limited liability company interest of the judgment debtor to satisfy the judgment. To the extent so charged, the judgment creditor has only the right to receive any distribution or distributions to which the judgment debtor would otherwise have been entitled in respect of such limited liability company interest.
> (b) A charging order constitutes a lien on the judgment debtor's limited liability company interest.
> (c) This chapter does not deprive a member or member's assignee of a right under exemption laws with respect to the judgment debtor's limited liability company interest. (d) The entry of a charging order is the exclusive remedy by which a judgment creditor of a member or a member's assignee may satisfy a judgment out of the judgment debtor's limited liability company interest and attachment, garnishment, foreclosure or other legal or equitable remedies are not available to the judgment creditor, whether the limited liability company has 1 member or more than 1 member.
> (e) No creditor of a member or of a member's assignee shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company.
> (f) The Court of Chancery shall have jurisdiction to hear and determine any matter relating to any such charging order.

[6] *Hanna v. Baier*, 2017 WL 6507187 (Del. Super. Dec. 19, 2017) (Emphasis supplied).

grant the Motions.[7] For the reasons stated below, the Court adopts the Commissioner's Report and Recommendation in its entirety and grants Regency's Motions.

Prior to 2005, § 18-703 provided that a charging order was the exclusive remedy to collect a judgment from a judgment debtor's interest in a LLC.[8] Furthermore, in 1986, the Court of Chancery held that the Chancery Court "lacked subject matter jurisdiction with respect to [charging orders] and that jurisdiction

---

[7] *Bridev One, LLC,* 2018 WL 824976 (Del. Super. Feb. 9, 2018) (Commissioner's Report and Recommendation).

[8] Pre 2005, § 18-703 stated, in pertinent part:

> (a) On application by a judgment creditor of a member or of a member's assignee, a court having jurisdiction may charge the limited liability company interest of the judgment debtor to satisfy the judgment. The court may appoint a receiver of the share of the distributions due or to become due to the judgment debtor in respect of the limited liability company which receiver shall have only the rights of an assignee, and the court may make all other orders, directions, accounts and inquiries the judgment debtor might have made or which the circumstances of the case may require.
>
> (b) A charging order constitutes a lien on the judgment debtor's limited liability company interest. The court may order a foreclosure of the limited liability company interest subject to the charging order at any time. The purchaser at the foreclosure sale has only the rights of an assignee.
>
> • • •
>
> (e) This section provides the exclusive remedy by which a judgment creditor of a member or member's assignee may satisfy a judgment out of the judgment debtor's limited liability company interest.
>
> (f) No creditor of a member shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company.

4

resided with the Superior Court."[9] As such, prior to 2005, charging orders were issued by the Superior Court.

In 2005, the General Assembly amended 6 *Del. C.* § 18-703. It added subsection (f) which states that "[t]he Court of Chancery shall have jurisdiction to hear and determine any matter relating to any such charging order."[10]

After the 2005 amendment and addition of subsection (f), the Superior Court continued to issue charging orders.[11] At least three charging orders were issued by this Court in 2017 prior to *Hanna*[12] (including one issued by the *Hanna* judge eleven months ago[13]). Those (pre-*Hanna*) orders are in conformity with the Court's practice, relied upon for decades, and its recognition of the doctrine of *stare decisis*.

---

[9] *Bridev One, LLC*, 2018 WL 824976, at *2 (discussing *MacDonald v. MacDonald*, 1986 WL 5480 (Del. Ch. May 9, 1986) (which held that, under the LLC statute at the time, the Court of Chancery lacked subject matter jurisdiction over charging orders and that the Superior Court was a "competent jurisdiction" under the statute because "the action necessary to reduce the foreign judgment to a Delaware judgment is essentially an action for money damages")).

[10] *See* Footnote 5.

[11] Charging Orders issued by several Superior Court judges since 2005 include: *First Presbyterian Church of Smyrna v. Ballard Builders, LLC, et. al.*, CA No. K10C-06-016 NEP (Del. Super. Feb. 7, 2014); *Chapman v. The Baeza Grp., LLC*, N12C-02-122 CEB (Del. Super. Oct. 1, 2012); *Artisans' Bank v. Corrozi-Fountainview, LLC*, CA No. S10J-04-087 (Del. Super. Apr. 6, 2010); *Bryde, P.A. v. Realty Enters., LLC*, CA No. 08C-10-267 FWW (Del. Super. Mar. 23, 2009).

[12] *Mfrs. & Traders Tr. Co v. Bowers*, CA No. S16J-09-119 (Del. Super. Jan. 6, 2017); *Snajkowski v. Quezada*, CA No. S16J-12-089 (Del. Super. Jan. 6, 2017); *Cty. Bank v. Parsons*, CA No. N17M-10-053 (Del. Super. Oct. 10, 2017).

[13] *See Snajkowski*, CA No. S16J-12-089.

5

Under the doctrine of *stare decisis*, "settled law is overruled only for urgent reasons and upon clear manifestation of error."[14] The law is clear that *stare decisis* is important to the administration of justice and should be followed unless there is a compelling reason to reject it.[15] *Stare decisis* "compel[s] [] adherence to [] precedent"[16] and "means that when a point has been once settled by decision it forms a precedent which is not afterwards to be departed from or lightly overruled or set aside. . ."[17] It is "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."[18]

In *State v. Barnes*, a 2005 case involving sentencing, the Delaware Supreme Court unambiguously stated, "we must take seriously the longstanding interpretation of a statute held by our Superior Court."[19] The Delaware Supreme Court explained that "[t]he doctrine of *stare decisis* exists to protect the settled expectations of citizens because elementary considerations of fairness dictate that individuals should

---

[14] *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117,124 (Del. 2006) (cited in *State v. Barnes*, 116 A.3d 883 (Del. 2015)).

[15] *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1299 (2017) ("Time and time again, this Court has recognized that the doctrine of *stare decisis* is of fundamental importance to the rule of law. . .[the Court] will not depart from the doctrine of *stare decisis* without some compelling justification").

[16] *Bank of Am. Corp.*, 137 S. Ct. at 1299.

[17] *Oscar George, Inc. v. Potts*, 115 A.2d 479, 481 (Del. 1955) (cited in *Barnes*, 116 A.3d 883).

[18] *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (cited in *Barnes*, 116 A.3d 883).

[19] *Barnes*, 116 A.3d at 891.

have an opportunity to know what the law is and to conform their conduct accordingly."[20]

Furthermore, if the meaning of a statute is in dispute, the Delaware Supreme Court has accepted the traditional interpretation of that statute as a reflection of legislative intent.[21] In *Barnes*, the Court found that "[r]eading the Code to continue parole eligibility [] is not only plausible, it [is] the interpretation that has been held by the Superior Court and the Board of Parole . . . for the entire period since DUIs were made felonies in 1995."[22]

*Barnes* noted that "[w]hen a statute is susceptible to two different interpretations, as it is here, the court is required to interpret the statute based on

---

[20] *Id.*

[21] *Watson v. Burgan*, 610 A.2d 1364, 1367 (Del. 1992) ("In view of the fact that the original regulation had remained in effect for fourteen years without legislative reaction, the practical and plausible administrative interpretation was acceptable as indicative of legislative intent") (internal quotations omitted); *Council 81, Am. Fed'n of State, Cty. & Mun. Emp., AFL-CIO v. State, Dep't of Fin.*, 293 A.2d 567, 571 (Del. 1972) ("In seeking legislative intent, we give due weight to the practices and policies existing at the time [the statute] was enacted . . . A long-standing, practical, and plausible administrative interpretation of a statute of doubtful meaning will be accepted by this Court as indicative of legislative intent") (cited in *Barnes*, 116 A.3d 883).

[22] *Barnes*, 116 A.3d at 889-90, n. 25 (holding that the Truth in Sentencing Act did not preclude felony DUI offenders from parole eligibility where "for a generation, none of the key government stakeholders most involved in implementing the felony DUI provisions of the Code . . . believed the enactment of the TIS Act to have deprived the Board of Parole of authority," where "[the Board of Parole's] understanding [was] entitled to strong consideration," and where "[s]uch a reading would also be consistent with the policy goal of the TIS Act . . ."). *See generally Apex Hosiery Co. v. Leader*, 310 U.S. 46, 488 (1940) ("Considerations of *stare decisis* are particularly forceful in the area of statutory construction, especially when a unanimous interpretation of a statute has been accepted as settled law for several decades") (cited in *Barnes*, 116 A.3d 883).

7

available, relevant information and evidence."[23] In *Vegso v. Board of Trustees*,[24] the Superior Court stated that where a statute is "doubtful or ambiguous in its terms, a practical administrative interpretation over a period of time, if founded upon plausibility, will be accepted by the courts as indicative of the legislative intent."[25] In *Harvey v. City of Newark*,[26] the Court of Chancery explained that "it would seem rare indeed to discover that a practical construction that had been relied upon for many years was based on an entirely implausible reading of the text at issue."[27]

In the instant case, the Commissioner's Report and Recommendation considered the issue of legislative intent and also analyzed cases (unrelated to the issue of charging orders) that concerned the Court of Chancery's jurisdiction. *Glanding v. Industrial Trust Company*[28] and *In re Arzuaga-Guevara*[29] provide guidance and reject divestment of jurisdiction when a new (or amended statute) is subsequently promulgated.

*Glanding* involved decrees of distribution for decedent estates where a new statute vested the newly-formed Orphans Court with jurisdiction to enter those decrees. The *Glanding* decision held that "concurrent jurisdiction will be found to

---

[23] *Barnes*, 116 A.3d at 888 (internal citations omitted).

[24] *Vegso v. Bd. of Tr.*, 1986 WL 9019, (Del. Super. Aug. 20, 1986).

[25] *Id.* at *4.

[26] *Harvey v. City of Newark*, 2010 WL 4240625, (Del. Ch. Oct. 20, 2010).

[27] *Id.* at *6.

[28] *Glanding v. Indus. Tr. Co.*, 45 A.2d 553 (Del. 1945).

[29] *In re Arzuaga-Guevara*, 794 A.2d 579, 587 (Del. 2001).

8

exist in many cases where the legal remedy afforded is adequate and complete in all respects"[30] and "[t]he jurisdiction conferred [] is but a permissive or conditional jurisdiction and in no respect is it exclusive or absolute."[31] So too, *In re Arzuaga-Guevara* held that the Court of Chancery and the Family Court had concurrent jurisdiction to appoint an interim guardian for a child because a family court remedy did not exclude Court of Chancery jurisdiction. The Court found that 10 *Del. C.* § 925,[32] which gave the Family Court jurisdiction over petitions for minor guardianships, did not divest the Court of Chancery of its concurrent jurisdiction to appoint guardianship. *In re Arzuaga-Guevara* also noted that 10 *Del. C.* § 925 was a response to (and repeal of)[33] a prior Supreme Court case[34] which had given the Court of Chancery exclusive jurisdiction over guardianship.[35]

Consistent with the approaches in those cases, the § 18-703 charging order statute does not explicitly divest this Court of its jurisdiction to enter charging orders. Additionally, § 18-703 (as amended) does not state that the Court of Chancery has

---

[30] *Glanding*, 45 A.2d at 559.

[31] *Id.*

[32] 10 *Del. C.* § 925 provides, in pertinent part, "[t]he [Family] Court and each judge shall have authority to: (16) [a]ppoint guardians of the person over minors under 18 years of age . . ."

[33] *In re Arzuaga-Guevara*, 794 A.2d at 583.

[34] *In re Bunting*, 311 A.2d 855, 857 (Del. 1973) ("Our Court of Chancery alone is vested with the power to appoint guardians of both the person and the property of a minor").

[35] *In re Arzuaga-Guevara*, 794 A.2d at 587 ("It is not sufficient [] to demonstrate that a guardianship proceeding [] is available in the Family Court. [There] must also [be a] show[ing] that the statute creating the Family Court's guardianship jurisdiction demonstrates a clear intent to divest the Court of Chancery of jurisdiction over similar matters").

*exclusive* jurisdiction.[36] Moreover, 10 *Del. C.* § 562 gives this Court the authority to "frame and issue all remedial writs, including writs of habeas corpus and certiorari, or other process, necessary for bringing the actions in that Court to trial *and for carrying the judgments of the Court into execution*."[37] As such, "we must give effect to the legislature's intent by ascertaining the plain meaning of the language used."[38] Thus, the General Assembly, aware of § 562 when it amended § 18-703 in 2005, did not expressly divest the Superior Court of its jurisdiction to issue charging orders and it did not "purport to vest"[39] the Court of Chancery with exclusive jurisdiction. The Delaware Supreme Court has noted that "repeal by implication is not favored" and that "unless it is expressly so provided, one act does not ordinarily repeal another, if both, in whole or in part, can be construed together."[40]

---

[36] *Bridev One, LLC v. Regency Centers, L.P.*, 2018 WL 824976, at *2 (Commissioner's Report and Recommendation) (finding that if the General Assembly had intended to give the Court of Chancery exclusive jurisdiction over § 18–703 charging orders, it could have explicitly provided so in subsection (f) just as it did in subsection (d), which provides that, "[t]he entry of a charging order is the *exclusive* remedy by which a judgment creditor of a member or a member's assignee may satisfy a judgment . . ."(Emphasis added).

[37] (Emphasis added).

[38] *Freeman v. X-Ray Ass'ns, P.A.*, 3 A.3d 224, 227 (Del. 2010).

[39] *In re Arzuaga-Guevara*, 794 A.2d at 583.

[40] *See Barnes*, 116 A.3d at n. 40 (noting that *U.S. v. Title Ins. Co.*, 265 U.S. 472, 485 (1924) emphasized "the importance of citizens' ability to rely on settled law, and the court's inclination to avoid causing 'injurious results' to those who have relied on that law in the event that the court alters it"); *Olson v. Halvorsen*, 986 A.2d 1150, 1160 (Del. 2009) ("We must adhere to the rules of statutory construction and, whenever possible, presume consistency between recent legislation and pre-existing law") (internal quotations omitted).

10

In the instant case, the Court does not find "compelling justification"[41] for departure from the doctrine of *stare decisis*.[42] Here, there was a Delaware judgment arising from a Delaware trial (and hearing to determine the amount of the judgment). As such, the Court in this case will follow the longstanding practice[43] of issuing § 18-703 charging orders.[44] In contrast, the facts in *Hanna* were more complex. *Hanna* involved a judgment creditor's efforts to obtain Delaware discovery in aid of execution of a Maryland charging order that survived a Maryland discharge in Bankruptcy from a Massachusetts judgment.

Furthermore, post-*Hanna*, another 2018 Superior Court case also concerned charging order jurisdiction. In that other case, a different Superior Court Commissioner, on March 5, 2018, issued a report and recommendation and similarly concluded that the Superior Court had jurisdiction to issue charging orders.[45] Clearly, pre- and post- *Hanna*, the Superior Court continues to follow the prevailing interpretation that the Superior Court has jurisdiction to issue charging orders.

---

[41] *Bank of Am. Corp.*, 137 S. Ct. at 1299.

[42] *See Barnes*, 116 A.3d at 892 ("A fundamental canon of statutory construction states that the long time failure of the legislature to alter a statute after it had been judicially construed . . . is persuasive of legislative recognition that the judicial construction is the correct one") (internal citations omitted).

[43] *Id.* at 890 ("When a statute has been applied by courts and state agencies in a consistent way for a period of years, that is strong evidence in favor of that interpretation").

[44] Moreover, the Court of Chancery (in an unrelated matter and a different context) noted that ". . .given the doctrine of *stare decisis*, any departure from this Court's prior opinions on the relevant issues must come from the Delaware Supreme Court." *Longpoint Investments Trust & Alexis Large Cap Equity Fund L.P., v. Prelix Therapeutics, Inc.* at *4 (Del. Ch. Jan. 13, 2016).

[45] *See Debt Collection Servs., LLC v. Owensby*, 2018 WL 1169642, at *1 (Del. Super. Mar. 5, 2018):

11

As to the issue of proof of a debtor's limited liability company interest, Debtors also argued that the Motions fail to prove that Jay Patel had any current membership interest in any of the identified limited liability companies and that Regency's requested scope of recovery was too broad. Given the length of this litigation, the Court finds that Regency's reliance on testimony and documentation from 2014 to 2016 is sufficient for the Court to grant the Motions to the extent allowable under 6 *Del. C.* § 18-703(a).[46]

Accordingly, upon *de novo* review, the Court adopts the Commissioner's February 9, 2018 Report and Recommendation in its entirety. Regency's Motions for Charging Orders are GRANTED.

**IT IS SO ORDERED**.

_____
Diane Clarke Streett, Judge

cc:    Richard L. Abbot, Esquire
       Richard S. Gebelein, Esquire
       David J. Soldo, Esquire

---

However, respectfully, I believe that [the *Hanna*] decision is incorrect. I believe that the proper reading of the 2005 amendment to 6 *Del. C.* § 18-703(f), is that it granted *concurrent* jurisdiction to the Court of Chancery and the Superior Court to hear and decide all matters relating to charging orders.

[46] § 18-703(a) provides, in pertinent part: "To the extent so charged, the judgment creditor has only the right to receive any distribution or distributions to which the judgment debtor would have otherwise been entitled in respect of such limited liability company interest."